WO

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David K. Everson and Patricia M. Everson,<br><br>    Plaintiffs,<br><br>vs.<br><br>David D. Everson, Individually and as President and Director of Mandalay Homes, Inc.,<br><br>and<br><br>Kristy Everson, aka Kristy Dryja, wife of David D. Everson,<br><br>and<br><br>Mandalay Homes, Inc., et al.<br><br>and<br><br>The Estate of Louis B. Schaeffer, Gene Schaeffer Gene Schaeffer Personal Representative, and Wife of Louis B. Schaefer,<br><br>    Defendants. | No. CV-08-1980-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment filed by The Estate of Louis B. Schaeffer. (Dkt. # 44.) For the following reasons, the Court grants the motion.

**BACKGROUND**

The matter before the Court pertains to an November 2, 2009 Amended Complaint (Dkt. # 49) filed by Plaintiffs David K. Everson and Patricia M. Everson ("Plaintiffs"). The

Complaint stems from a 2005 arrangement in which Plaintiffs entrusted the transport, care, and sale of sixteen horses to their son, David D. Everson, and his girlfriend at the time, Kristy Dryja (Mr. Everson and Ms. Dryja later married). The specific facts of this arrangement and the subsequent conduct that gives rise to the present lawsuit are lengthy. This Order, therefore, only discusses the facts necessary to this ruling.

Plaintiffs' Complaint alleges several causes of action against Defendants David D. Everson, Kristy Everson, Mandalay Homes (an Arizona corporation for which David D. Everson has served as President and Director), and The Estate of Louis D. Schaeffer (the "Estate").[1] This Motion for Summary Judgment pertains only to The Estate. Prior to his death, Mr. Schaeffer represented David D. Everson and Kristy Everson (collectively the "Everson Defendants") in a justice court action against Plaintiffs in the South Phoenix Justice Court of Maricopa County. According to Plaintiffs, Mr. Schaeffer brought an action for a stablemen's lien under Arizona law, even though he had no basis in law or fact to support that action. Plaintiffs allege that Mr. Schaeffer pursued the lien in a deceptive and concerted effort to help the Everson Defendants permanently deprive Plaintiffs of those horses.

The Estate's Motion seeks summary judgment on each of the three claims that the Plaintiffs assert against it: (1) fraud upon the court; (2) abuse of process; and (3) civil conspiracy/chain conspiracy. (Dkt. # 44.)

**LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the

---

[1] The Plaintiffs' thirteen claims include: (1) breach of settlement agreement; (2) abuse of process; (3) trover/conversion; (4) fraud in the inducement; (5) fraud upon the court; (6) civil conspiracy/chain conspiracy; (7) fraudulent misrepresentation; (8) trespass *de bonis asportatis*; (9) trespass to chattel; (10) unjust enrichment; (11) promissory fraud; (12) declaration for mail fraud pursuant to 18 U.S.C. § 1341; and (13) declaration for conspiring to defraud the United States Internal Revenue Service. (Dkt # 49.)

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## DISCUSSION

To defeat summary judgment, Plaintiffs must establish a genuine issue of material fact with respect to their claims against The Estate. Because Plaintiffs do not do so, the Court grants summary judgment in favor of The Estate.

### I. Fraud on the Court

Fraud upon the court "embrace[s] only that species of fraud which does or attempts to[] defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (quotation omitted). "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *United States v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972), *aff'd sub nom. Nader v. United States*, 410 U.S. 919 (1973); *see also Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 641 (N.D. Cal. 1978) (same). For

example, an attorney might commit fraud upon the court when he institutes an action "to which he knew there was a complete defense." *Alexander*, 882 F.2d at 424. (citing *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1079 (2d Cir. 1972)). "Less egregious misconduct," however, "such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Valerio*, 80 F.R.D. at 641; *see also England v. Doyle*, 281 F.2d 304, 310 (9th Cir. 1960) ("We cannot say . . . that appellee's nondisclosure displayed an 'unconscionable' plan or scheme which influenced the decision of the court.")

Even when viewed in a light most favorable to the Plaintiffs, Mr. Schaeffer's conduct during the justice court action does not rise to the level of a fraud upon the court. Plaintiffs allege that Mr. Schaeffer brought a stablemen's lien pursuant to Arizona Revised Statute § 3–1295,[2] even though he possessed certain evidence that allegedly negated the basis for the lien. According to Plaintiffs, this evidence included deposition testimony and a tape-recorded telephone message in which the Everson Defendants stated that they did not want payment for the care and feed of Plaintiffs' horses. Plaintiffs contend that Mr. Schaeffer committed a fraud on the court when he failed to produce this evidence during the justice court action. Yet, the undisputed evidence establishes that while the Everson Defendants did not initially expect payment for the care of the horses, the Everson Defendants later requested payment from Plaintiffs for the care that occurred after the Plaintiffs and the Everson Defendants had a falling out. (Dkt. # 49 at Ex. 7.) There is thus nothing in the record suggesting that Mr. Schaeffer brought an action for a stablemen's lien, knowing that there was a "complete defense." *See Alexander*, 882 F.2d at 424.

Moreover, to the extent that Plaintiffs allege that Mr. Schaeffer should have disclosed this evidence, this alone is insufficient to give rise to a cause of action against The Estate for fraud on the court. Assuming that this evidence was relevant to the justice court action,

---

[2]Section 3-1295 provides, in pertinent part, that "[a] person who furnishes pasture, feed or other services for livestock on the premises of that person has a lien on the stock for the amount of the charges that are due and unpaid."

Plaintiffs' claim still fails because mere "nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Valerio*, 80 F.R.D. at 641.

Next, to the extent that Plaintiffs argue that Mr. Schaeffer intentionally deceived the justice court when he stated that there was no settlement agreement, that argument finds no support in the record. Although Mr. Schaeffer did tell the justice court that there was no settlement agreement (Dkt. # 47, Ex. 20), he did so only *after* the parties had withdrawn their agreement. (Dkt. # 45 at Ex. 15–16.). In fact, while the parties' settlement agreement was still pending, Mr. Schaeffer filed a notice of the tentative settlement agreement with the justice court. That agreement, however, was quickly withdrawn due to Patricia Everson's unwillingness to comply with the terms of the agreement. (*See* Dkt. # 44, Ex. 14–15.) Plaintiffs do not dispute this.

Plaintiffs also provide no authority to support their argument that Mr. Schaeffer committed fraud on the Court when he failed to provide a copy of the settlement agreement to Plaintiffs. Failure to disclose the settlement agreement, which had fallen through, had no effect on the "judicial machinery" and its ability to "perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *See Alexander*, 882 F.2d at 424. Failure to disclose the settlement agreement simply does not constitute the type of "egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence" that gives rise to a claim for fraud on the court. *See Tel. & Tel. Corp.*, 349 F. Supp. at 29.

Nor do Plaintiffs establish that they were harmed by any of Mr. Schaeffer's alleged misconduct. To the extent that Plaintiffs claim that they lost their horses due to the stableman's lien, that argument is controverted by the record. Here, the undisputed facts provide that the justice court action and the stablemen's lien were ultimately dismissed. And, while Plaintiffs' horses were sold, *they were not sold pursuant to the stablemen's lien*, but in accordance with a separate lien that a non-party to this action obtained against Plaintiffs' horses. (*See* Dkt. # 45 at ¶ 33, Ex. 22.)

**II.     Abuse of Process**

1    Under Arizona law, the elements of an abuse-of-process are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (Ct. App. 1982). To prevail on this claim, a plaintiff "must not only present evidence that the defendant used a court process for a primarily improper purpose, they must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel v. Allstate Inc. Co.*, 208 Ariz. 252, 259, 92 P.3d 882, 889 (Ct. App. 2004).

Plaintiffs have failed to establish a genuine issue of fact pertaining to their abuse of process claim. Here, Plaintiffs allege that Mr. Schaeffer had an improper purpose for bringing the stablemen's lien because he brought the that action in a concerted effort to deprive Plaintiffs of their horses. (Dkt. # 49 at ¶ 73.) Plaintiffs, however, fail to provide any admissible evidence—deposition, affidavit, or otherwise—of an improper purpose. And, to the extent that Plaintiffs rely on the allegations of the complaint, this is insufficient to survive The Estate's Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e) (noting that the party who carries the burden of proof "may not rest upon the mere allegations or denials of [the party's] pleadings" on summary judgment, " but . . . must set forth specific facts showing that there is a genuine issue for trial." *See also see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Moreover, there is an entirely logical explanation for Mr. Schaeffer's conduct. *See Crackel*, 208 Ariz. at 259, 92 P.3d at 889. The undisputed evidence establishes that the Everson Defendants had not been paid for their care of the Plaintiffs' horses when they sought relief through the justice court action. By representing the Everson Defendants and pursuing the stablemen's lien, Mr. Schaeffer's conduct was consistent with his clients' motive to recover those expenses. Given these facts, no reasonable jury could conclude that Mr. Schaeffer took actions that are incapable of a logical explanation "without reference to [an] improper motive[]." *See id.*; *see also Anderson*, 477 U.S. at 248 (holding that to survive

1 summary judgment, the non-moving party must adduce evidence "such that a reasonable jury
2 could return a verdict" for that party).

## III. Claims for Civil Conspiracy/Chain Conspiracy

Under Arizona law, civil conspiracy is not a separate cause of action. *See Pankratz v. Willis*, 155 Ariz. 8, 12, 744 P.2d 1182, 1186 (Ct. App. 1987) (citing *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966)). Instead, conspiracy is a vehicle whereby an injured party may recover "damages arising out of the acts committed pursuant to the conspiracy." *Tovrea*, 100 Ariz. at 131, 412 P.2d at 63. "The damage for which recovery may be had in such a civil action is not the conspiracy itself but the injury to the plaintiff produced by the specific overt acts." *Id.* In other words, "a mere agreement to do wrong imposes no liability[,]" but an agreement plus a wrongful act gives rise to liability when the wrongful act constitutes a separate cause of action. *See Elliott v. Videan*, 164 Ariz. 113, 116–17, 791 P.2d 639, 643 (Ct. App. 1989).

Construing Plaintiffs' filings liberally, they argue that the Mr. Schaeffer was part of a broad conspiracy to commit each of the tortious acts set forth in the individual Counts of the Complaint. (*See* Dkt. ## 48 at 13; 49 at 19.) According to Plaintiffs, "based on the preponderance of the evidence in the record, a reasonable person would be hard pressed not to find the acts committed herein by the [sic] Louis B. Schaeffer do not rise to civil/chain conspiracy." (Dkt. # 48 at 13.) The record, however, does not support Plaintiffs' contention that Mr. Schaeffer engaged in any type of conspiracy. Plaintiffs only argument is that Mr. Schaeffer conspired to commit an abuse of process and perpetrate a fraud upon the court. But, as discussed above, both of these claims fail as a matter of law. Plaintiffs further fail to present any facts suggesting that Mr. Schaeffer was involved in a conspiracy to commit any of the other wrongful conduct alleged in the Complaint. Accordingly, the Court grants summary judgment in favor of The Estate.

**IT IS THEREFORE ORDERED** that The Estate's Motion for Summary Judgment (Dkt. # 44) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **TERMINATE** The Estate of Louis D. Schaeffer from the this action.

DATED this 2nd day of March, 2010.

_____
G. Murray Snow
United States District Judge