**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David K. Everson and Patricia M. Everson,<br><br>  Plaintiffs,<br><br>vs.<br><br>David D. Everson and Kristy Everson aka Kristy Dryja, husband and wife; Mandalay Homes, Inc., an Arizona Corporation,<br><br>  Defendants. | No. CV-08-1980-PHX-GMS<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by Defendants David D. Everson, Kristy Everson and Mandalay Homes, Inc. (Doc. 147). For the reasons set forth below, the Court grants Defendants' motion.[1]

**BACKGROUND**

On January 25, 2006, Defendants David D. Everson and Kristy Dryja[2] arranged to

---

[1] Defendants have requested oral argument. The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The two have since married and the former Ms. Dryja is now named Kristy Dryja Everson.

transport sixteen Arabian horses owned by Everson's father and stepmother, Plaintiffs David K. Everson and Patricia Everson, from Texas to Phoenix. (Doc. 148, ¶ 4). Defendants paid for the transport of the horses, and paid for the care and upkeep of the horses in Phoenix. (*Id.*). On May 23, 2006, Plaintiff Patricia Everson wrote a letter to Defendant David D. Everson stating, among other things, that she was making arrangements to have the horses returned to Texas. (Doc. 150, Ex. 5). On June 9, 2006, he sent her a certified letter in return stating that the expenses of caring for the horses exceeded $15,000, and requesting a cashiers check for $9,999.99 as reimbursement. (Doc. 150, Ex. 6). The letter further stated that Defendants had filed for a hearing to perfect a stableman's lien on the horses. (*Id.*). On June 5, 2006, Defendants had in fact filed for such a hearing in the Justice Court pursuant to Arizona Revised Statute ("A.R.S.") § 3-1295(A) (2002). (Doc. 148, ¶ 10). Although they originally filed the action themselves, they were eventually represented in the matter by Louis Schaeffer, who is since deceased.

The parties negotiated, and on November 2, 2006, drafted a settlement agreement in which Plaintiffs would be allowed to remove their horses without payment to Defendants for their care. (Doc. 150, Ex. 15). Defendants agreed to the terms of the settlement agreement. (Doc. 148, Ex. B). The agreement stated that it would become effective upon Defendants' acceptance from Plaintiffs of Veterinarian Certificates obtained after a veterinary inspection. (*Id.*). On November 8th, Plaintiffs' attorney moved to withdraw from representing them in the Justice Court action, and on November 14th, Defendants moved to set a trial date. (Doc. 150, Ex. 31; Doc. 150, Ex. 16).

On November 30th, 2006, an unrelated judgment against Plaintiffs from a Texas court was domesticated in Maricopa County in the amount of $21,691.83. (Doc. 45, Ex. 21; CV2006-018307). To satisfy that judgment, the sixteen horses were sold for a total price of $5,600 on February 6, 2007 at a sheriff's sale.[3] (Doc. 45, Ex. 22). Defendants then moved

---

[3] The horses were sold in two lots. One lot was sold to the parties who had domesticated the out-of-state lien, and one lot was sold to Defendants. (Doc. 45, Ex. 22).

1 to dismiss their Justice Court case without prejudice; the matter was dismissed on February 20, 2007. (Doc. 150, Ex. 24).

On October 28, 2008, Plaintiffs filed a thirteen-count complaint naming David D. Everson, Kristy Dryja Everson, Mandalay Homes (a corporation of which David D. Everson is the president) and the estate of Louis Schaeffer as defendants.[4] In Count One, Plaintiffs allege that Defendants breached the terms of the 2006 settlement agreement by refusing to permit Plaintiffs to remove the horses and transport them back to Texas. (Doc. 49). In Counts Two and Five, they claim that Defendants knew that their Justice Court case was meritless and that they nevertheless filed it, thereby committing fraud on the court and abuse of process. (*Id.*). In Counts Three, Eight, and Nine, they allege that Defendants' failure to return the horses constituted various property torts. (*Id.*). In Counts Four, Seven, and Eleven, they allege that the Defendants fraudulently represented that they would care for the horses without asking for compensation, only to later demand such compensation. (*Id.*). In Count Ten, they allege that the Defendants were unjustly enriched by keeping and/or purchasing the horses. (*Id.*). Finally, in Counts Twelve and Thirteen, they allege that Defendants violated the federal criminal mail fraud statute and conspired to defraud the Internal Revenue Service. (*Id.*). Although the horses had already been sold at a sheriff's sale for $5,600, Plaintiffs alleged that the horses had "a value exceeding $100,000." (*Id.*).[5] They seek "punitive damages, compensatory damages, consequential damages, actual damages, restitutionary damages, and further relief" for all their claims. (*Id.*).

---

[4] In both their original and their amended complaint, no Count 12 was included and the final two Counts were numbered 13 and 14. (Docs. 1, 49). This Order will refer to them as Count 12 and Count 13.

[5] In evaluating whether a complaint satisfies the $75,000 amount in controversy requirement set forth by 28 U.S.C. § 1332(a), "[t]he sum claimed by the plaintiff controls so long as the claim is made in good faith." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000); *see also St. Paul Mercury Indem. Co.*, 303 U.S. 283, 288 (1938). Here, the Court finds that Plaintiffs made their allegation in good faith, and that the Court therefore has jurisdiction over their claim.

On March 2, 2010, summary judgment was granted for the estate of Louis Schaeffer. (Doc. 53). The remaining Defendants filed for summary judgment on all counts pursuant to Rule 56 of the Federal Rules of Civil Procedure on April 5, 2011. (Doc. 147).

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once a party has moved for summary judgment and presented evidence to support its claim that no material fact exists, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*" FED. R. CIV. P. 56(e) (emphasis added); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (holding that summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

**II. Analysis**

    **A. Mandalay Homes**

Plaintiffs include Mandalay Homes, a corporation of which David D. Everson is the president, as a Defendant on all claims. A corporation is only bound by an act of its officer that is "within the scope of [the officer's] authority and which is in reference to a matter to which [the officer's] authority extends." *Fridena v. Evans*, 127 Ariz. 516, 519, 622 P.2d 463, 466 (1980). Plaintiffs make no allegation and provide no facts from which to infer that David D. Everson took any of the alleged actions within the scope of his authority as the president of Mandalay Homes, Inc. Further, they do not address the Defendants' arguments regarding

Mandalay Homes in their response. (Doc. 149). Therefore, no claims survive against the corporation. *See Celotex*, 477 U.S. at 322-23. For the remainder of this order, "Defendants" shall refer only to David D. Everson and Kristy Dryja Everson.

### B. Count One - Breach of Contract

In Count One, Plaintiffs allege that Defendants breached the settlement agreement that was drafted pursuant to the Justice Court action brought by Defendants in 2006. (Doc. 49). Although Defendants claim that they never signed the agreement, they concede that they "agreed to its terms." (Doc. 148, Ex. B). The agreement provides that Plaintiffs were to remove the horses from Defendants' care, and Defendants would require no payment for the care provided up to that point. (Doc. 150, Ex. 15).

The agreement contains numerous provisions regarding veterinary examination of the horses, including one that Defendants would grant Plaintiffs' "chosen veterinarian" access to the horses for Health Certificate and another that Defendants were to provide Plaintiffs "with a Veterinarian Health Certificate as to all of the horses' current condition and health with the exception of Sally and Bell." (*Id.* ¶¶ (2)(A), (5)). Significantly, it includes the following paragraph: "This Settlement Agreement shall be effective upon the receipt of the Veterinarian Certificate referenced in paragraph 5 herein and the [Plaintiffs'] acceptance of same, said acceptance to not be reasonably withheld." (*Id.* ¶ 10).

Defendants provided health certificates to Plaintiffs' attorney, who sent them to Plaintiffs by fax with a cover sheet stating "The Court will be resetting the case if we do not submit the Stipulation." (Doc. 150, Ex. 14). On the same day, Plaintiffs' attorney moved to withdraw from the case. (Doc. 150, Ex. 31). Plaintiffs asked that a veterinarian of their choice examine the horses instead. (Doc. 150, Ex. 13). The veterinarian selected by Plaintiffs never inspected the horses. Defendants contend that the veterinarian refused to conduct the examinations without being first paid by Defendants, and Plaintiffs contend that they "would have paid [the veterinarian] for the inspection" had it gone forward. (Doc. 148, Ex. B ¶ 10; Doc. 150, Ex. 1 ¶ 22; Doc. 150, Ex. 2 ¶ 21). Defendants moved to set a trial date for their suit. (Doc. 45, Ex. 18).

Plaintiffs contend that they "never rejected the Health Certificates David D. Everson and Kristy Dryja Everson obtained," and that Defendants therefore breached the agreement when they resumed their suit. (Doc. 150, Ex. 1 ¶ 22; Doc. 150, Ex. 2 ¶ 21). The Settlement Agreement, however, states that it "shall be effective upon the receipt of the Veterinarian Certificate . . . *and the [Plaintiffs'] acceptance of same*, said acceptance not to be unreasonably withheld." (Doc. 150, Ex. 15 ¶ 10) (emphasis added). Although Plaintiffs state that they did not reject the certificates, they make no claim and provide no evidence that they affirmatively *accepted* the certificates, as required by the agreement. They do not claim, for example, that they signed or authorized their attorney to sign the stipulation referred to in her fax. In fact, in the Justice Court, they filed a motion opposing setting an immediate trial date in which they criticized the quality of the inspections documented by the certificates, writing that the "veterinarian did not conduct an examination for any derogatory condition of the horses." (Doc. 45, Ex. 19). Defendants have shown that a condition precedent—Plaintiff's affirmative acceptance of the veterinarian certificates—never took place, and the agreement therefore never went into effect. *See Celotex*, 477 U.S. 325 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). The claim for breach of contract must therefore fail.

### C. Counts Two and Five - Abuse of Process and Fraud upon the Court

In Counts Two and Five, Plaintiffs allege that the Justice Court action brought by David D. Everson and Kristy Dryja constituted abuse of process and fraud upon the court. (Doc. 49). Under Arizona law, the elements of an abuse-of-process are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982). To prevail on this claim, Plaintiffs "must not only present evidence that the defendant used a court process for a primarily improper purpose, they must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel v. Allstate Inc. Co.*, 208 Ariz. 252, 259, 92

P.3d 882, 889 (Ct. App. 2004). Fraud upon the court, meanwhile, embraces "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party." *U. S. v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972), *aff'd sub nom. Nader v. United States*, 410 U.S. 919 (1973); *see also Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 641 (N.D. Cal. 1978).

Plaintiffs allege that Defendants did not bring the Justice Court suit in order to recover their costs in caring for the horses, but instead as part of a concerted effort to take the horses from Plaintiffs. (Doc. 49). The undisputed evidence establishes that Defendants had not been paid for their care of Plaintiffs' horses when they sought relief through the Justice Court action. Even granting as true for the purposes of this order Plaintiffs' claim that Defendants initially promised to care for the horses without seeking compensation, Defendants' letter of June 9, 2006 makes it clear that any such agreement had ended and they would no longer do so. (Doc. 150, Ex. 6). Defendants' actions can thus be logically explained without relying on Plaintiff's theory. *See Crackel*, 208 Ariz. at 259. Plaintiffs have not introduced any evidence to support their claim that Defendants' purpose in bringing the suit was improper, and instead have only cast "metaphysical doubt" upon Defendants' motives. *Matsushita*, 475 U.S. at 586. The claim for abuse of process fails.

Plaintiffs further claim that Defendants did not own the property at 3033 West Dobbins Road, but were occupying it pursuant to an option purchased by Mandalay Homes. (Doc. 149). As such, they allege that the horses were not housed on "the premises" of Defendants as required by A.R.S. § 3-1295(A).[6] They argue that because the stableman's lien statute did not, therefore, cover the Defendants, the Defendants "made willful misrepresentations to the Justice Court." (Doc. 149). Had the Justice Court determined that the property was not Defendants' "premises," for the purposes of the statute, it may have chosen to dismiss the suit. It is, however, not at all clear whether the option arrangement

---

[6] The statute reads, in part, "[a] person who furnishes pasture, feed or other services for livestock on the premises of that person has a lien on the stock for the amount of the charges that are due and unpaid." A.R.S. § 3-1295(A).

1 would invalidate any stableman's lien. Even assuming that it would, the fact that Plaintiffs may have had a viable defense to the suit did not render the suit an abuse of process. It was an attempt to recover the money spent on the horses, and was not brought "for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt*, 133 Ariz. at 353. Count Two therefore fails. Likewise, the fact that a suit has a colorable defense does not render that suit a fraud upon the court. Count Six therefore fails as well.

### D. Counts Three, Eight, and Nine - State Property Torts

The complaint sets fourth three separate state law property torts, including trover/conversion (Count Three), trespass *de bonis asportatis* (Count Eight), and trespass to chattel (Count Nine). (Doc. 49). The allegations underlying these claims are essentially identical, namely, that Defendants prevented Plaintiffs from gaining access to their horses after Patricia Everson wrote of her intention to bring the horses back to Texas on May 23, 2006. (Doc. 49).

Arizona property torts, including trespass and conversion, are subject to a statute of limitations. A.R.S. § 12-542 (2003). Such cases must be filed "within two years after the cause of action accrues." *Id.* A cause of action accrues once "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 191 Ariz. 313, 322, 955 P.2d 951, 960 (1998). A written report from a defendant informing a plaintiff of the facts that give rise to damages constitutes the accrual of a cause of action. *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 198 Ariz. 173, 176, 7 P.3d 979, 982 (App. Div. 2000).

Here, Defendants wrote the Plaintiffs a certified letter, dated June 9, 2006, which stated that "we have filed for a hearing to perfect a lien on your horses pursuant to ARS [*sic*] 3-1295. Any attempt to remove the horses prior to the hearing or payment of all monies owed will be denied." (Doc. 49, Ex. 2). On the date that they received the letter, Plaintiffs had notice that Defendants would not allow them access to the horses or permit them to remove the horses without a substantial payment. At that point, Plaintiffs "kn[ew] or with reasonable diligence should [have] know[n] the facts underlying the cause." *Doe v. Roe*, 191 Ariz. at 322. Nevertheless, they waited until October of 2008 to commence this suit. Counts Three,

- 8 -

Eight, and Nine are therefore time-barred under A.R.S. § 12-542.

### E. Counts Four, Seven and Eleven - State Fraud Claims

Plaintiffs allege three state fraud claims, including fraud in the inducement (Count Four), fraudulent misrepresentation (Count Seven), and promissory fraud (Count Eleven). (Doc. 49). In Arizona, a showing of fraud requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc.*, 123 Ariz. 498, 500, 647 P.2d 629, 631 (1982). Plaintiffs therefore need to establish not merely that Defendants falsely promised that they would care for the horses for free, but that Plaintiffs suffered a "consequent and proximate injury." *Id.* Causation between the fraud and the loss of the horses is "an element essential to [Plaintiffs'] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex*, 477 U.S. 322.

The uncontroverted evidence is that Plaintiffs' horses were eventually sold in order to satisfy a judgment that a separate party obtained against Plaintiffs and domesticated in Maricopa County. (Doc. 45 Ex. 21–22). Plaintiffs have not introduced any evidence disputing this judgment or suggesting any causation between Defendants' alleged fraud and this judgement. The Supreme Court has made clear that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Plaintiffs have failed to offer any evidence of causation, and therefore their fraud claims must fail as a matter of law.

### F. Count Six - Civil Conspiracy

In Count Six, Plaintiffs allege that Defendants acted pursuant to a conspiracy to deprive Plaintiffs of their horses. (Doc. 49). "A civil conspiracy is not actionable in Arizona." *Pankratz v. Willis*, 155 Ariz. 8, 12, 744 P.2d 1182, 1186 (Ct. App. 1987) (citing *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966)). Instead, conspiracy is a vehicle whereby an injured party may recover "damages arising out of the

acts committed pursuant to the conspiracy." *Tovrea*, 100 Ariz. at 131, 412 P.2d at 63. "The damage for which recovery may be had in such a civil action is not the conspiracy itself but the injury to the plaintiff produced by the specific overt acts." *Id.* In other words, "a mere agreement to do a wrong imposes no liability[,]" but an agreement plus a wrongful act gives rise to liability when the wrongful act constitutes a separate cause of action. *See Elliott v. Videan*, 164 Ariz. 113, 117, 791 P.2d 639, 643 (Ct. App. 1989).

Plaintiffs have already alleged, in their other claims, that they were damaged directly by Defendants' actions. When alleged against the person who committed the act itself, a conspiracy claim does not provide another avenue of recovery. *Pankratz*, 155 Ariz. at 12 Count Six is therefore dismissed.

### G. Count Ten - Unjust Enrichment

In Count Ten, Plaintiff allege that Defendants were unjustly enriched by denying Plaintiffs access to the horses, and that Plaintiffs thereby suffered the loss of their horses. (Doc. 49). Under Arizona law, a claim for unjust enrichment must satisfy five elements. A plaintiff must allege "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law." *Cmty. Guardian Bank v. Hamlin*, 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (App. 1995). Plaintiffs allege that because Defendants denied them access to their horses, they "have suffered the loss of their horses." (Doc. 49). Plaintiffs have not introduced any evidence that Defendants were enriched, or that Plaintiffs were impoverished, by the sheriff's sale on February 6, 2007. (Doc. 45, Ex. 22). Even if the February 6, 2007 sheriff's sale were to be construed as an impoverishment, there is no sufficient connection between the sale and Defendants' actions. The horses were not sold pursuant to Defendants' lien, but in accordance with a separate judgment that a non-party to this action had domesticated in Maricopa County. (Doc. 45 Ex. 21–22). Therefore, there is neither a connection between the enrichment and the impoverishment, nor an absence of justification for the enrichment and the impoverishment. Count Ten is therefore dismissed.

### H. Counts Twelve and Thirteen - Federal Criminal Claims

Plaintiffs allege that Defendants have committed mail fraud in violation of 18 U.S.C. § 1341, and that they have conspired to defraud the Internal Revenue Service, which would constitute a violation of 18 U.S.C. § 371. Sections 371 and 1341 are criminal statutes that contain no provision creating a private right of action. It is generally improper "to imply a cause of action where Congress has not provided one." *Corr. Svcs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001). Federal courts are unanimous in refraining from implying a private cause of action in these statutes. *See, e.g.*, *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir. 1979); *Bryant v. Donnell*, 239 F. Supp. 681, 685 (W.D. Tenn. 1965). These claims do not create a private right of action and fail as a matter of law. *Corr. Svcs. Corp.*, 534 U.S. at 67 n.3.

## CONCLUSION

Plaintiffs have introduced no evidence that the condition precedent in the settlement agreement was met. They have also failed to introduce any evidence that the stableman's lien brought by Defendants constituted an abuse of process or fraud upon the court. They have produced no evidence of causation between Defendants' alleged fraud and the loss of their horses. Their state property torts are time-barred by state law. Civil conspiracy is not a separate cause of action under Arizona law. Plaintiffs have failed to provide any evidence that supports the elements of an unjust enrichment claim. Finally, their federal law claims do not provide a private right of action.

**IT IS THEREFORE ORDERED:**

1. Defendant's Motion for Summary Judgement (Doc. 147) is **granted**.
2. The Clerk of Court is directed to **terminate** this action.

DATED this 11th day of October, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge